## Commonwealth v. Shook

*James F. Marsh,* District Attorney, for Common-wealth.

*Jerome P. Cheslock,* for defendant.

WILLIAMS, P. J., August 28, 1974.—

## FINDINGS OF FACT

1. On June 2, 1974, defendant was observed, by a State Police officer, operating his motor vehicle on U. S. Route 209 North of Marshalls Creek, in Monroe County, Pa.

2. The State Police officer observed that the inspection ticket for defendant's vehicle had expired.

3. Defendant made a left turn across the path of the officer's vehicle and the vehicles collided.

4. As a result of the collision, defendant was rendered unconscious and taken to the General Hospital in an ambulance.

5. At the hospital a blood sample was taken after defendant, awakened by the attending physician, signed a consent to the taking of the sample.

6. The blood sample was taken at the request of the police officer.

7. Prior to the signing of the consent form, the doctor advised defendant that the State Police wanted the blood test made.

8. The consent form was read to defendant prior to its execution and defendant signed the consent but his signature is illegible.

9. The injuries to defendant were such that one State Policeman at the scene thought he was going to die.

10. Defendant has no recollection of the events which transpired from the time of the accident until after the blood sample was taken.

11. Defendant was unconscious when he arrived at the hospital.

12. Based upon the medical testimony, defendant, at the time he signed the consent, was not oriented as to time or place and had no knowledge or understanding of the effect of his signature to the consent form.

13. Defendant's consent to the extraction of blood was not voluntary.

14. The physician who treated defendant for his injuries extracted the blood on his own decision for medical reasons to aid him in treating his patient as well as for police purposes.

## DISCUSSION

There can be no doubt from the testimony of Dr. Parsons who extracted the blood sample that defendant was incapable of signing a voluntary consent to the taking of his blood.

The real issue is whether the testimony of Dr. Parsons renders the blood test admissible under the ruling in Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148. If not, the results of the test are excluded by the decision of Mapp v. Ohio, 367 U. S. 643.

The situation in Tanchyn differs substantially from the circumstances here present. In Tanchyn, a blood sample was taken following an accident in which Tanchyn was injured. Taken to the hospital, the attending physician ordered a blood sample as a matter of routine practice. The sample was taken at 2:30 a. m. The next day between 8 a. m. and 8:30 a. m., the county coroner requested the pathologist to have any excess portion of defendant's blood tested for alcoholic purposes. Under such circumstances, the results of the test were held to be properly admitted at trial. Here, the facts differ widely.

A police officer testified that he was present when the blood was extracted; that he requested the doctor to extract the blood to determine its alcoholic content; and that the doctor awakened defendant and told him the State Police wanted a blood test taken. What we have here is the positive testimony of a Commonwealth witness that the test was made at the request of the police for use by the police. Unlike Tanchyn, the request of the State Police preceded the extraction of the blood. Likewise unlike Tanchyn, the purpose of extracting the blood under the Commonwealth's evidence was two-fold: (1) For medical purposes; and (2) for police use. In Tanchyn, the request was that any excess blood taken some six hours previous to the time of the request be used to test for its alcoholic content. The blood when extracted was never initially intended for use by the police. Here, the contrary appears and, in our opinion, differentiates this case from Tanchyn.

## CONCLUSIONS OF LAW

1. That the extraction of defendant's blood was not voluntarily consented to by defendant and the results of the test may not be admitted at trial on the theory that the blood was extracted by means of a voluntary consentable search.

2. That the results of the blood test shall not be admissible at trial.

## ORDER

And now, August 28, 1974, petition to suppress is sustained, and it is ordered that the results of the blood test shall not be admissible at trial.